# EXHIBIT "A"

LAMONICA HERBST & MANISCALCO, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Salvatore LaMonica Esq.
Holly Rai, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

GOLDAN, LLC,

Debtor.
----------------------------------------------------------x

Chapter 7
Case No. 09-70955-REG

**STIPULATION AND ORDER BY AND BETWEEN THE CHAPTER 7 TRUSTEE
AND COMMUNITY NATIONAL BANK PROVIDING FOR THE TERMS AND
CONDITIONS FOR THE SALE OF THE REAL PROPERTY KNOWN AS, AND
LOCATED AT, 3366 PARK AVENUE, WANTAGH, NEW YORK 11793**

**WHEREAS**, on February 18, 2009 (the "Petition Date"), an involuntary petition was

filed against the Goldan LLC (the "Debtor") by the petitioning creditors, Michael Litvin, Daniel

Perla and Louis Fox, for relief pursuant to Chapter 7 of Title 11 of the United States Code (the

"Bankruptcy Code"); and

**WHEREAS**, an Order for Relief was entered on February 20, 2009; and

**WHEREAS**, upon the entry of the Order for Relief, the Office of the United States

Trustee appointed Allan B. Mendelsohn, Esq. as the interim Chapter 7 Trustee (the "Trustee").

He has since qualified and is the duly appointed and acting permanent Trustee of this estate; and

**WHEREAS**, until on or about June 28, 2007, the Debtor held all right, title and interest

in the commercial real property known as, and located at, 3366 Park Avenue, Wantagh, New

York 11793, designated Section 57, Block 91, Lot 2, 13 and 111 on the Tax Map of Nassau

County (the "3366 Property"); and

1

**WHEREAS**, on or about June 14, 2007, 3366 Park Avenue LLC (the "3366 LLC") was formed as a domestic limited liability corporation by the principals of the Debtor, Mark Goldman and Jeffrey Daniels; and

**WHEREAS**, on or about June 21, 2007, the Debtor and Peter Capone, as Trustee of the Capone Revocable Trust dated July 31, 1995 (the "Capone Trust"), entered into a purported operating agreement, which provided, among other things, that the Debtor and the Capone Trust would each hold a 50% membership interest in the 3366 LLC in exchange for the capital contributions reflected in that operating agreement; and

**WHEREAS**, by deed dated June 28, 2007 and recorded March 12, 2008, the Debtor conveyed all right, title and interest in part of the 3366 Property, namely Lot 2, to the 3366 LLC; and

**WHEREAS**, by deed dated September 25, 2008 and recorded October 8, 2008, denominated a "correction deed", the Debtor conveyed all right, title and interest in each of the lots comprising the 3366 Property; and

**WHEREAS**, according to the transfer documents recorded in connection with the transfers of the Debtor's interests in the 3366 Property, there was no consideration paid in connection with those transfers; and

**WHEREAS**, on or about September 25, 2008, Community National Bank ("CNB") agreed to loan to 3366 LLC the principal sum of $2,750,000.00 (the "Loan") to be secured by a first mortgage lien upon the 3366 Property; and

**WHEREAS**, on or about September 25, 2008, 3366 LLC made and delivered to CNB the following loan documents (the "Loan Documents"): Re-stated Mortgage Note (the "Note") in the principal sum of $2,750,000.00; Collateral Assignment of Rents and Leases; and Consolidation,

Extension an Modification of Mortgage Agreement (the "Mortgage"), which Loan Documents were recorded in the office of the Nassau County Clerk on the 8th day of October 2008, and, by virtue of which, the Mortgage constitutes a valid first lien upon the 3366 Property; and

**WHEREAS,** pursuant to the Loan Documents, 3366 LLC assigned to CNB all rents, leases, issues and profits of the 3366 Property as further security for the Loan; and

**WHEREAS,** by Order to Show Cause dated February 13, 2009, supporting documents and complaint dated February 12, 2009, CNB commenced an action against the Debtor and other parties in the Supreme Court of the State of New York, County of Nassau, under Index No. 002553/09 (the "Community Action"); and

**WHEREAS,** in the complaint filed in the Community Action, CNB asserted it was the holder of a valid first lien against the 3366 Property, that its lien is superior to that of the other parties, that it is entitled to all rents, leases and profits derived from the 3366 Property and that the actions taken by the plaintiffs in a related action in the Supreme Court of the State of New York, County of Nassau violated and impaired CNB's rights under the Loan Documents; and

**WHEREAS,** on or about April 16, 2009, the Community Action was removed to this Court by the Trustee; and

**WHEREAS,** on January 21, 2010, Peter Capone, Peter Capone Defined Benefit Pension Plan, Chesapeake Hills General Partnership and 3366 LLC filed an answer to CNB's complaint in the Community Action, which included a counterclaim against CNB on behalf of the Capone Trust, alleging that it owed a fifty-percent (50%) interest in 3366 LLC, that the granting of the Mortgage was in derogation of the Capone Trust's alleged ownership rights and, as a result, seeking a declaration that the Mortgage is improper, invalid, null and void and should be cancelled as a matter of record; and

**WHEREAS,** on or about May 21, 2010, CNB filed an amended complaint in the Community Action in accordance with an Order of this Court; and

**WHEREAS,** on or about July 6, 2010, the Trustee interposed an answer to CNB's amended complaint and, on or about July 16, 2010, Peter Capone, Peter Capone Defined Benefit Pension Plan, Chesapeake Hills General Partnership and 3366 LLC interposed an answer to the amended complaint; and

**WHEREAS,** CNB has asserted that, as of the Petition Date, the Debtor was indebted to CNB in the principal amount of $2,873,396.39, plus per diem interest in the daily amount of $488.72 (the "CNB Lien"); and

**WHEREAS,** as of February 25, 2011, CNB has asserted that the sum of $2,941,365.29 is required to satisfy the CNB Lien; and

**WHEREAS,** the Trustee has disputed the amount alleged to be due and owing to CNB under the terms of the Loan and Loan Documents; and

**WHEREAS,** the parties in the Community Action have negotiated the terms of a stipulation settling and discontinuing the Community Action, pursuant to which the parties agreed that CNB holds a first priority lien against the 3366 Property; and

**WHEREAS,** the Trustee and CNB believe that an expedited sale of the 3366 Property in accordance with the Bankruptcy Code is in the best interests of the parties; and

**WHEREAS,** the Trustee and CNB believe that an expedited sale of the 3366 Property will provide the greatest distribution and possibility of a realization of value from the 3366 Property for the benefit of CNB, the estate and its creditors; and

**WHEREAS,** the Trustee has agreed to sell the 3366 Property at a duly noticed public auction sale; and

4



**WHEREAS,** the Trustee is in the process of retaining David R. Maltz & Co., Inc. ("Maltz") as the Trustee's auctioneer to market and conduct the public auction sale of the 3366 Property; and

**WHEREAS,** the Trustee and CNB recognize and agree that the sale proceeds may not be sufficient to satisfy all administrative costs and the CNB Lien; and

**WHEREAS,** the Trustee and CNB have negotiated and entered into this agreement, which, among other things, provides for carve-out from the CNB Lien for the Trustee's administrative costs and expenses associated with the auction sale, as well as funds for ultimate distribution to the creditors of this estate.

**NOW, THEREFORE,** in consideration of the foregoing, it is mutually agreed, consented to and stipulated by and between the parties hereto as follows:

1.     The Trustee, through Maltz, will market the 3366 Property for sale by public auction sale (the "Auction Sale"). The Auction Sale shall offer the 3366 Property for sale "as is", "where is" and free and clear of all liens, claims and encumbrances of whatever kind or nature, with any such liens to attach to the net proceeds of sale.

2.     The Trustee and CNB agree that, for purposes of the Auction Sale and this Stipulation only, the secured claim of CNB in and to the 3366 Property shall be fixed and allowed in the amount of $2,920,167.01, together with additional per diem interest in the amount of $479.62 for the period April 1, 2011 through the date of sale (the "Stipulated CNB Lien"). Further the Trustee and CNB agree that, pursuant to section 363(k) of the Bankruptcy Code, CNB shall be authorized to credit bid the Stipulated CNB Lien at the Auction sale and shall not be required to pay to the Trustee at the time of the Auction Sale a deposit of 10% of the competing offer as otherwise required by Section 6(e) hereof.

5



3.    In the event that CNB submits the highest and best offer to purchase the 3366 Property and such offer is accepted by the Trustee (the "CNB Bid"), the Trustee shall convey the 3366 Property to CNB by Trustee's deed upon CNB's payment and delivery of the of the following sums to the Trustee, subject to this Court's approval: (i) the statutory commissions of the Trustee up to the sum of 1% of the CNB Bid; (ii) up to the sum of $35,000.00 as attorneys' fees and expenses for the Trustee's undersigned counsel related to the sale of the 3366 Property; (iii) commissions of Maltz, equal to the sum of $25,000.00, together with actual and necessary out-of-pocket expenses; (iv) the sum of $40,000.00 to the Trustee for the benefit of the estate and its creditors; (v) such other sums that may be needed at closing in order to properly close title such as title fees, recording costs and real estate tax adjustments not to exceed $15,000.00.

4.    In the event that a third party other than CNB submits the highest and best offer at the Auction Sale, and such offer is accepted and closed by the Trustee (the "Third Party Sale"), the following costs and expenses of the sale and sums for the benefit of the estate shall be "carved out" of the Stipulated CNB Lien and paid to the estate, subject to this Court's approval, as follows: (i) the statutory commissions of the Trustee up to the sum of 2.0% of the third party's offer; (ii) up to the sum of $35,000.00 as attorneys' fees and expenses for the Trustee's undersigned counsel related to the sale of the 3366 Property; (iii) commissions of Maltz, equal to the sum of $25,000.00, plus 10% of any sums bid in excess of $3.0 million dollars, together with Maltz's actual and necessary out-of-pocket expenses; (iv) the sum of $40,000.00 to the Trustee for the benefit of the estate; and (v) such other sums that may be needed at closing in order to properly close title such as title fees, recording costs  and real estate tax adjustments not to exceed $15,000.00 (the "Carve Out").  The balance of the sale proceeds after the payment of the Carve Out shall be paid to CNB up to the amount of the Stipulated CNB Lien.



5.     In the event the sale proceeds exceed the sums due to CNB on account of the Stipulated CNB Lien (less the Carve Out), any other proceeds of sale shall be retained by the Trustee in a separate account for the benefit of the estate and any junior lien holders with secured claims against the 3366 Property, subject to further order of the Bankruptcy Court.  Nothing contained herein is a waiver of any of the Trustee's rights to contest or otherwise object to the claims of any junior lien holders or any other party asserting a claim or interest against the 3366 Property or the proceeds of sale.

6.     The following terms and conditions shall govern the Auction Sale and the solicitation of competing offers to purchase the 3366 Property:

   a.  The bidder submitting the highest competing offer must sign an agreement agreeing to be bound by certain terms and conditions of sale;

   b.  Any competing offer must not be contingent on any unperformed due diligence or contingent upon the competing offeror obtaining financing;

   c.  The competing offeror must demonstrate, to the satisfaction of the Trustee, evidence of its ability to conclude the transaction on or before 45 days from the date of the Auction Sale;

   d.  The competing offeror must provide, at or before the Auction Sale, a certified check made payable to Trustee equal to 10% of the competing offer;

   e.  In the case of any subsequent competing offer after the initial bid made by a third party, the bidding will be in increments of $50,000.00; and

   f.  The competing offeror shall be responsible for the payment of any and all transfer taxes and recording fees in connection with the sale.

7.     The Trustee shall be authorized to propose such other terms and conditions of sale to govern the bidding at the Auction Sale as he determines, in his sole discretion, are in the best interests of the estate and its creditors.

8.    The Trustee shall be authorized and allowed to distribute the net proceeds of sale to CNB in accordance with this Stipulation as soon as is practical after the sale, without further order of the Court.   CNB shall execute and deliver such documents and records to the Trustee as may be necessary to effectuate this Stipulation and the closing of the sale contemplated herein.

9.    Nothing contained in this Stipulation shall affect the rights and remedies of CNB with respect to its claims for payment of its unsecured debt arising from obligations other than the Loan or Loan Documents from the guarantors or any third parties.

10.    The terms and conditions of this Stipulation are subject to approval by the Bankruptcy Court.  In the event the Bankruptcy Court fails to approve each and every term and condition contained herein, then this Stipulation shall be of no force and effect and nothing contained herein shall be deemed to be a waiver of any of the rights, remedies and obligations of the parties hereto.

11.    This Stipulation may be executed in multiple counterparts each of which when taken together, shall constitute one (1) original document.  The parties hereto consent to the entry of this stipulation as an order in this proceeding.

12.    The Bankruptcy Court shall retain exclusive jurisdiction over the terms and conditions and interpretation of this Stipulation.

13.    This Stipulation constitutes an entire agreement between the parties hereto and may not be altered or modified in any way, except by a writing executed by all of the parties hereto.

14.    For purposes of interpretation, this Stipulation shall be deemed to have been jointly drafted by the parties.

8

15.     The Trustee agrees to properly apply to the Bankruptcy Court for the approval of this Stipulation and authority to sell the collateral in accordance herewith.

Dated: **April 21**, 2011
       Wantagh, New York

                                        LAMONICA HERBST & MANISCALCO, LLP
                                        Attorneys for Allan B. Mendelsohn, Esq., Trustee

                        By:     _Salvatore La Monica_
                                        Salvatore LaMonica, Esq.
                                        A Member of the Firm
                                        3305 Jerusalem Avenue, Suite 201
                                        Wantagh, New York 11793
                                        Telephone: (516) 826-6500


Dated: **April 20**, 2011
       Garden City, New York

                                        BERKMAN, HENOCH, PETERSON, PEDDY &
                                        FENCHEL, P.C.
                                        Attorneys for Community National Bank

                        By:     _Joseph E. Macy_
                                        Joseph E. Macy, Esq.
                                        Bruce D. Mael, Esq.
                                        100 Garden City Plaza
                                        Garden City, New York 11530
                                        Telephone: (516) 222-6200


**SO ORDERED this ___ day of _____ 2011**


_____
**Honorable Robert E. Grossman**
**United States Bankruptcy Judge**


*M:\Documents\Company\Cases\Goldan, LLC\3366 Park\STIP re Sale of Property.doc*

9